UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GILBERT ELLIS,                                    :
                                                  :
                          Plaintiff,              :        25-CV-1224 (AS) (RWL)
                                                  :
            - against –                           :    **REPORT AND RECOMMENDATION**
                                                  :     **TO HON. ARUN SUBRAMANIAN:**
GREENE KUSH et al.,                               :     **MOTION TO DISMISS (DKT. 62)**
                                                  :    **MOTION FOR SANCTIONS (Dkt. 95)**
                          Defendants.             :
                                                  :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Gilbert Ellis, proceeding pro se, brings this action against Defendants Greene Kush, Richard Farrell, Lynn Jerome, Paula Sinclair, the New York City Police Department ("NYPD"), the City of New York ("City"), the Brooklyn District Attorney's Office ("BDAO"), and 10 Doe defendants.  Ellis alleges that Jerome and Sinclair filed a false criminal report with the NYPD which precipitated Ellis's unjustified arrest and violations of his constitutional rights.  Now before the Court is (1) a motion to dismiss Ellis's first amended complaint filed by Farrell, Kush, and the City (collectively, "Moving Defendants"), and (2) Ellis's motion for sanctions.  For the following reasons, the Moving Defendants' motion to dismiss should be GRANTED with partial leave to amend, and Ellis's motion for sanctions should be DENIED.

## PROCEDURAL HISTORY

Ellis commenced the instant lawsuit on February 11, 2025.  (Dkt. 1.)  On February 28, 2025, before any defendant appeared in the case, Ellis filed the operative amended

1

complaint (the "FAC").[1]  (Dkt. 10.)  On March 17, 2025, Ellis sought leave to supplement the FAC.  (*See* Dkts. 26-27.)  The Court denied the request.  (Dkt. 35.)  On April 6, 2025, Ellis again sought leave to supplement his pleading and filed a "Verified Affirmation" attesting to additional factual allegations (the "Ellis Aff.").  (Dkt. 46-1.)  In light of Ellis's pro se status, the Court ruled that the factual allegations in the Ellis Affirmation would be treated as part of the FAC.  (Dkt. 56.)

On May 13, 2025, the Moving Defendants moved to dismiss the FAC, supported by a memorandum of law ("Def. Mem.").  (Dkts. 62, 63.)  Ellis filed an opposing brief ("Opp.") on May 23, 2025.  (Dkt. 66.)  On June 16, 2025, the Moving Defendants filed a reply brief ("Reply").  (Dkt. 85.)  Soon after, Ellis filed several documents without leave of the Court.  (*See, e.g.*, Dkts. 87-88, 90-94.)  The Court ruled that Ellis's filings at Dkts. 87 and 88 would be considered as a sur-reply and noted that "no further submissions [regarding the motion to dismiss] are needed."  (Dkt. 89.)

On September 26, 2025, Ellis moved for sanctions under Federal Rule of Civil Procedure 11 ("Sanctions Mot.").  (Dkt. 95.)  The Moving Defendants filed a letter in opposition.  (Dkt. 104.)  Ellis filed a reply.  (Dkt. 107.)

The case was referred to the undersigned for general pretrial purposes and a Report and Recommendation on the motion to dismiss.  (Dkt. 72.)

---

[1] In addition to the pleading at Dkt. 10, Ellis has filed two additional "Amended Complaint[s]." (*See* Dkts. 9, 27.)  Ellis filed an amended complaint on February 28, 2025 (Dkt. 9); that filing was superseded by the operative complaint filed three days later.  (Dkt. 10.)  Ellis filed a subsequent amended complaint on March 17, 2025, without first seeking leave of the Court.  (Dkt. 27.)  The Court denied Ellis's effort to again amend the complaint, rendering the pleading at Dkt. 27 a nullity. (Dkt. 35.)  Accordingly, the parties briefing is appropriately directed to the pleading at Dkt. 10. Both parties refer to operative pleading as the "First Amended Complaint" or "FAC" even though it is, technically, the second amended complaint.  In any event, the Court adopts the parties' terminology.

**MOVING DEFENDANTS' MOTION TO DISMISS**

**Factual Background**

The following facts are derived primarily from the FAC as supplemented by the Ellis Affirmation.  Ellis's extensive briefing in opposition to the motion to dismiss, however, contains additional factual allegations, which the Court has considered to the extent they are relevant.[2]  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion").  In accordance with the standard for assessing a motion to dismiss, all non-conclusory factual allegations are accepted as true, and all reasonable inferences are made in Ellis's favor.  *See Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024).

On October 12, 2023, Jerome and Sinclair executed a deed of conveyance of property in exchange for approximately $200,000.  (Ellis Aff. at 1-2.)  The deed was notarized by Diego Santacruz.  (Opp. at 4.)  Ellis was not present at the execution of the deed or otherwise involved in the transaction.  (Ellis Aff. at 1; Dkt. 88 at 2.)  Jerome and

---

[2] Ellis's briefing on the motion to dismiss totals nearly 50 pages single-spaced.  The Moving Defendants have invited the Court to strike the excess pages in the Opposition.  (Reply at 1 n.1.)  The Court declines to do so and has considered Ellis's papers in full.  However, Ellis is forewarned that any future submissions failing to comply with this District's local rules and the undersigned's individual practices governing the length of filings may be struck or disregarded in whole or in part.  Ellis also filed over 100 pages of exhibits in support of his opposition to the motion to dismiss (the "Exhibits").  (*See generally*, Opp.).  The Exhibits include, *inter alia*, multiple affidavits sworn by Ellis, various communications between the parties, financial records, filings from a related state court case, and other documentation related to the dispute.  The Court has considered these only to the extent they may be considered on a motion to dismiss, consistent with the legal standards discussed below.

Sinclair then filed a criminal complaint with the NYPD falsely accusing Ellis of defrauding them in connection with the conveyance.  (Ellis Aff. at 1-2.)

Assistant District Attorney Farrell, the Chief Real Estate Fraud Investigator at BDAO, supervised the resulting criminal investigation.  (Ellis Aff. at 1; Opp. at 11.)  During the investigation, NYPD Officer Kush prepared an arrest warrant affidavit – approved by Farrell – based on the false allegations made by Jerome and Sinclair.  (Opp. at 1, 25.)  On February 19, 2024, Kush arrested Ellis.  (Opp. at 1; FAC at 2.)  An arrest warrant, however, did not exist. [3]  (Dkts. 87, 88.)  Following the arrest, Ellis was not booked, fingerprinted, or arraigned, and there was no "judicial review" of the arrest.[4]  (Opp. at 1, 6.)  Ellis appeared for a court date on March 1, 2024, but was told there "there was no record of his case."  (Opp. at 1, 24.)

Shortly after his arrest, Ellis voluntarily provided ADA Farrell with "extensive documentation" that the conveyance was voluntarily executed by Jerome and Sinclair, and not a product of fraud or forgery (the "Exculpatory Material").  (Ellis Aff. at 1-2; Opp. at 22.)  The Exculpatory Material included a recantation by Jerome and Sinclair

---

[3] Ellis's allegations concerning an arrest warrant are in apparent contradiction.  In his Opposition, Ellis states, "Kush submitted an arrest [warrant] affidavit … that directly resulted in [Ellis's] arrest," and Farrell "submitted a warrant."  (Opp. at 2, 29-30; *see also id.* at 24 (describing "judicial authorization of Plaintiff's arrest").)  On sur-reply, Ellis unconditionally states that there was no judicial warrant for his arrest.  (Dkts. 87 at 1, 88.)  The Court is "neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."  *Lenart v. Coach Inc.*, 131 F. Supp.3d 61, 67 (S.D.N.Y. 2015) (internal quotations omitted).  For purposes of this decision, the Court will accept as true Ellis's most current and definitive allegation that his arrest was warrantless.

[4] In contradiction with Ellis's assertions in his opposition, one of his recent filings – made after the Court's order that no further filings were needed with respect to the motion to dismiss – asserts that he was searched, handcuffed, charged, and fingerprinted.  (*See* Dkt. 100.)  In the event Ellis amends his complaint, his allegations will need to clarify the nature of his arrest and processing.

"acknowledging that the allegations made in their [criminal] complaint were inaccurate and unsupported." (Ellis Aff. at 2.)  The Exculpatory Material also included the notarized deed of conveyance, a sworn statement from Santacruz affirming that Ellis was not present at the execution, and financial records establishing "$204,900 in earnest funds and consideration paid directly to [Jerome and Sinclair]." (*Id.*)  "[D]espite overwhelming evidence of [Ellis's] innocence," the investigation continued for some time but "did not result in prosecution." (FAC at 2; Ellis Aff. at 2.)

Interspersed throughout the FAC and Opposition, Ellis makes various allegations concerning Farrell and Kush's conduct during the investigation, some of which are conclusory and/or in contradiction with Ellis's assertion in his Affirmation that the investigation did not result in prosecution or any judicial proceeding.  For instance, Ellis alleges Farrell "selectively prosecuted [Ellis]," conspired with Jerome and Sinclair, "suppressed exculpatory evidence," "introduced false affidavits and allowed perjured testimony to be used against [Ellis]," "misrepresented facts to the grand jury" and "in court proceedings," "misled the court … thereby … depriving [Ellis] of a fair trial," "fabricated charges," "manipulate[d] witness testimony," and retaliated against Ellis for "asserting his rights, including … attempting to expose prosecutorial misconduct." (FAC 2-10.)  Ellis also alleges that the NYPD and BDAO failed to adequately train and supervise Kush and Farrell.  (FAC at 5-6; *see also* Opp. at 35-36 (identifying "specific training deficiencies").)

At some point, Ellis requested his arrest record pursuant to New York freedom of information law ("FOIL") but was incorrectly informed by Farrell that it was judicially sealed. In fact, Ellis alleges, the record was administratively sealed.[5] (Opp. at 9.)

Separate from their criminal complaint, Jerome and Sinclair initiated a civil action in January 2025 against Ellis in New York state court disputing ownership over the property and the circumstances of the real estate transaction. (Opp. at 14; *see also* Dkt. 66-14 at ECF 13-19.) *See generally*, *Lynn Jerome et al v. 1883 East 53rd Street LLC et al*, Case No. 500938/2025 (Sup. Ct., Kings County) (the "State Action").

In this action, Ellis asserts twenty claims against the various defendants. Ten of his claims are brought pursuant to 42 U.S.C. § 1983, alleging a *Brady* violation (Counts 1, 18), fabrication of evidence (Count 2), malicious prosecution (Counts 3, 8), retaliatory prosecution (Count 6), failure to intervene (Count 9), abuse of process (Count 11), and violation of equal protection (Count 15). Ellis also alleges supervisor liability (Count 10) and seeks injunctive relief (Count 4). Count 5 alleges a conspiracy to interfere with civil

---

[5] Though not mentioned in the FAC, Ellis's opposition makes much ado about Farrell's reference to judicial, instead of administrative, sealing and accuses Farrell of "willful mischaracterization" made to "obscure judicial oversight." (Opp. at 14.) Aside from the conclusory nature of Ellis's allegation, he nowhere explains the relevance of characterizing sealing of Ellis's arrest record as judicial as opposed to administrative. Moreover, Ellis's assertions of who informed him that his records were judicially sealed are inconsistent. For instance, Ellis sometimes attributes the mischaracterization to Kush, not Farrell. (*See, e.g.*, Opp. at 29.) And, in the Exhibits, Ellis includes a letter – drafted by a non-party NYPD lieutenant – denying Ellis's FOIL request and stating the "records are sealed under court order." (*See* Dkt. 66-10 at ECF 4.) Another letter clarifies that the records remained sealed to accommodate a criminal investigation which, per the "Assistant District Attorney handling the investigation," remains ongoing. (*Id.* at ECF 2-3.) In short, Ellis's allegations of Farrell's "mischaracterization" is not well plead. To the extent Ellis seeks to challenge the FOIL determinations on the merits, the proper forum to do so is an Article 78 proceeding. *Hudson v. County of Dutchess*, 51 F. Supp.3d 357, 371 (S.D.N.Y. 2014); *Hayes v. Perotta*, 751 F. Supp.2d 597, 602 (S.D.N.Y. 2010).

rights in violation of 42 U.S.C. § 1985. Three of the claims are brought pursuant to criminal statutes, alleging fraud upon the court under 18 U.S.C. § 371 (Count 7), conspiracy against rights under 18 U.S.C. § 241 (Count 16), and deprivation of rights under 18 U.S.C. § 242 (Count 17). Four claims are brought under state law: defamation (Count 12), negligence (Count 13), intentional infliction of emotional distress (Count 14), and fraudulent misrepresentation (Count 19). Finally, Ellis asserts a claim against Farrell pursuant to Rule 3.8 of the ABA Model Rules of Professional Conduct (Count 20). (*See* FAC 2-10.) Ellis alleges that, as a result of the false allegations, "unlawful detention," and "wrongful prosecution," he suffered severe emotional distress, as well as financial, professional, and reputational harm. (FAC at 2.)

## Legal Standards

### A.    Rule 12(b)(6)

Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry*

*Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotations and citation omitted).  However, this tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "[R]ather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotations, brackets, and citation omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint.  *See Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."  *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012).

As Ellis is proceeding pro se, the Court is obliged to afford a liberal construction to his allegations to raise the "strongest arguments that they suggest."  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotations and citations omitted).  "Nevertheless, dismissal of a pro se complaint is appropriate where a

plaintiff fails to state a plausible claim supported by more than conclusory allegations.  In other words, the duty to liberally construe a [pro se] plaintiff's complaint is not the equivalent of a duty to re-write it."  *Cheng v. United States*, 725 F. Supp.3d 432, 437 (S.D.N.Y. 2024) (internal quotations and citations omitted), *aff'd*, 132 F.4th 655 (2d Cir. 2025).  Pro se plaintiffs are typically given at least one opportunity to amend their complaint, unless amendment would be futile.  *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014); *Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006).

## B.    28 U.S.C § 1983

To state a claim under § 1983, "a plaintiff must allege that some person acting under color of state law deprived him of a federal right."  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012) (internal quotations omitted) (quoting *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)).  Because § 1983 does not provide its own substantive rights, plaintiffs must identify the federally-protected right that was allegedly violated.  *See Gonzaga University v. Doe*, 536 U.S. 273, 285, 122 S. Ct. 2268 (2002); *see also Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S. Ct. 1905 (1979).  Accordingly, a plaintiff must show that "(1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [their] federal statutory rights, or [their] constitutional rights or privileges."  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  Additionally, "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."  *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998).

Municipalities cannot be vicariously liable under § 1983 solely for their employees' acts.  *Monell v. Department of Social Services*, 436 U.S. 658, 694-95, 98 S. Ct. 2018 (1978).  Rather, municipalities are only liable under § 1983 for constitutional deprivations

9

resulting from a "government's policy or custom." *Id*. A plaintiff may demonstrate that

such a policy or custom exists by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp.3d 134, 158 (S.D.N.Y. 2016) (quoting

*Brandon v. City of New York*, 705 F. Supp.2d 261, 276-77 (S.D.N.Y. 2010)). To prevail

on a *Monell* claim, a plaintiff must also show that "there is a direct causal link between

[the] municipal policy or custom and the alleged constitutional deprivation" they suffered.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989).

## C.    Prosecutorial Immunity

It is well settled that state prosecutors enjoy absolute immunity for the "initiation

and pursuit of a criminal prosecution, including presentation of the state's case at trial."

*Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606 (1993) (citing *Imbler v.

Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984 (1976)); *see also Shmueli v. City of New

York*, 424 F.3d 231, 236-238 (2d Cir. 2005). The purpose of the immunity doctrine is to

"preserve the integrity of the judicial process and to enable zealous[] perform[ance of]

prosecutorial duties … [without] the constant threat of legal reprisals." *Pinaud v. County

of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting *Hill v. City of New York*, 45 F.3d

653, 656 (2d Cir. 1995)) (internal quotations omitted) (alterations in original).

In determining whether absolute immunity is available, courts employ a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (internal quotations omitted) (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538 (1988)); *see also Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) ("The actions of a prosecutor are not covered by absolute immunity merely because they were performed by a prosecutor; rather, the question is whether the actions are part of a prosecutor's traditional functions") (internal quotations and citations omitted).

Prosecutors thus are immune from civil suits for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler*, 424 U.S. at 430) (internal quotations omitted). Absolute immunity covers virtually all acts associated with a prosecutor's function as an advocate, regardless of their motivation. *Bernard v. County of Suffolk*, 356 F.3d 495, 504-505 (2d Cir. 2004). This includes, for example, deciding whether to bring charges, making bail applications, presenting charges to a grand jury, presenting evidence at a suppression hearing, and engaging in plea negotiations. *See Giraldo v. Kessler*, 694 F.3d 161, 165-67 (2d Cir. 2012); *Hill*, 45 F.3d at 661; *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981).

Absolute immunity does not extend to a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273. In the

11

context of a prosecutor developing a factual record, the Supreme Court has distinguished between an "advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial [or indictment], on the one hand, and the [prosecutor-detective] … searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."  *Id.*; *see also Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) ("investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution … are shielded by absolute immunity when done by prosecutors").  A prosecutor is absolutely immune for their conduct in preparing and filing an application for an arrest warrant, so long as they are not also attesting to the facts underlying the warrant.  *Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S. Ct. 502 (1997).

When a prosecutor performs administrative duties and investigatory functions unrelated to a prosecution or its preparation, the prosecutor is entitled only to qualified immunity.  *Simon*, 727 F.3d at 172 (citing *Buckley*, 509 U.S. at 273).  Qualified immunity "shield[s] executive employees from civil liability under § 1983 if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights."  *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (internal quotations, brackets, and citations omitted).

**Discussion**

The Moving Defendants seek dismissal of each cause of action for failure to state a claim under Rule 12(b)(6).  The Court addresses each claim in turn and finds that all claims should be dismissed, some with leave to amend, and others without.

**A.    *Brady* Violation (Against Farrell) (Counts 1, 18)**

In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. 83, 87, 83 S. Ct. 1194 (1963).  To successfully state a *Brady* violation, Ellis must allege that evidence "favorable to the accused" was "suppressed by the State, either willfully or inadvertently," and that the suppression resulted in prejudice.  *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (internal quotations omitted).  Ellis's theory that Farrell's failure to turn over the Exculpatory Material during the investigation violated *Brady* fails for a variety of reasons.

First, Farrell did not have an obligation to turn over *Brady* material during the pre-indictment investigation.  *McClean v. County of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *9 (S.D.N.Y. Dec. 3, 2018) ("Prior to Plaintiff's indictment, [the prosecutor] had no obligation to disclose *Brady* material and thus Plaintiff is not entitled to damages") *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019).  Instead, *Brady* requires disclosure of exculpatory evidence only in time for its effective use ***at trial***. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001).  Here, there was no trial scheduled.  Indeed, Ellis alleges he was not even arraigned.  (Opp. at 1.)

Second, Ellis alleges that ***he*** provided the Exculpatory Material to Farrell.  (Ellis Aff. at 1-2 (listing the "extensive documentation" Ellis provided to Farrell); Opp. at 8 (identifying the favorable evidence of that which "Plaintiff provided Farrell").)  *Brady* does not require a prosecutor to turn over evidence already in the possession of the defendant. *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997) ("*Brady* cannot be violated if the defendants had actual knowledge of the relevant information"); *United States v.*

13

*LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence") (internal citations omitted).

Third, no prejudice resulted from Farrell's conduct. Prejudice exists where the "nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936 (1999). Here, there was no verdict, much less an unfavorable one.

Finally, even if there was a *Brady* violation (i.e., if the case was prosecuted and evidence was suppressed), Farrell would be immune from suit. *See Hill*, 45 F.3d at 662 (prosecutor entitled to absolute immunity for "failure to turn over *Brady* material … after the prosecutorial phase had begun"); *Shmueli*, 424 F.3d at 237 (prosecutor "entitled to absolute immunity despite allegations of his … deliberate withholding of exculpatory information") (internal quotations omitted).

Ellis's allegations in the FAC directly foreclose a *Brady* claim and, even if they did not, Farrell would still be immune from suit. Dismissal of the *Brady* claim with prejudice thus is appropriate. *See Kling v. World Health Organization*, 532 F. Supp.3d 141, 154 (S.D.N.Y. 2021) ("Courts regularly dismiss complaints with prejudice where the defendant is immune from suit").

## B.    Fabrication Of Evidence (Against Farrell) (Count 2)

"[F]air trial claims based on fabrication of information [are restricted] to those cases in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). Ellis alleges "Farrell knowingly introduced false

affidavits and allowed perjured testimony to be used against Plaintiff despite evidence proving Plaintiff's innocence. The fabricated statements were used to justify Plaintiff's arrest and prosecution." (FAC at 3.) By his own admission, however, Ellis was not prosecuted. (Ellis Aff. at 2.) Thus, the Court considers if Farrell fabricated evidence to justify Ellis's arrest.

The FAC, even as supplemented by the Ellis Affirmation and liberally construed, fails to plausibly allege fabrication, because "[c]onclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial." *Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *10 (S.D.N.Y. Sept. 28, 2023) (citing cases). As best the Court can glean, the "fabricated statements … used to justify [Ellis's] arrest" were those by the complaining witnesses, Jerome and Sinclair. (FAC at 3; *see also* Opp. at 3 (Jerome and Sinclar were the "originators of the knowingly false accusations").) *See Edwards v. County of Nassau*, No. 21-CV-1670, 2022 WL 939652, at *13 (E.D.N.Y. Mar. 29, 2022) (dismissing fabrication of evidence claim against police officers where the at-issue false statements were made "[w]ith no allegation of coercion or forgery" by the complaining witnesses, not the defendants).

In opposition, Ellis describes the fabricated evidence as an "arrest affidavit prepared by [Kush] and approved by [Farrell] that contained knowingly false assertions regarding Plaintiff's presence at the deed signing." (Opp. at 1.) This theory also fails. Nothing in this additional allegation plausibly alleges a deliberate fabrication *by Farrell* (as distinct from Kush, who prepared the affidavit). And, Ellis's allegations that Farrell had knowledge of the false statements in the affidavit at the time the affidavit was prepared is conclusory, and contradicted by the rest of Ellis's pleading. Farrell was only

15

made aware of the Exculpatory Material, including Jerome and Sinclair's recantation, *after* Ellis was arrested.[6]   (Opp. at 22 (Ellis "voluntarily provided [the] exculpatory documents to ADA Farrell shortly after arrest").)  *See Ashley v. City of New York*, 992 F.3d 128, 143 (2d Cir. 2021) ("fabrication element requires … that the defendant knowingly make a false statement or omission").  Moreover, absolute immunity insulates prosecutors from claims that they knowingly presented false evidence when acting in their role as advocate, including when preparing arrest warrants.  *Anilao v. Spota*, 27 F.4th 855, 870 (2d Cir. 2022); *see also Kalina*, 522 U.S. at 129 (prosecutors are absolutely immune for preparing and filing a motion for arrest warrant, except when prosecutor also acts as a witness and attests to the underlying facts).  To the extent Ellis seeks liability based on Farrell's act in "submit[ing] a warrant based on falsehoods by Kush" (Opp. at 2), that claim is barred by absolute immunity.

Finally, given Ellis fervently denies on sur-reply that his arrest was pursuant to a judicial warrant, *see* Dkt. 87, the false affidavit – even if a fabrication – did not result in Ellis's arrest (or any other deprivation of liberty).

Ellis's claim based on fabrication of evidence thus should be dismissed with leave to amend if he can plausibly allege in good faith that Farrell fabricated evidence (as opposed to *presenting* fabricated evidence) which resulted in a deprivation of Ellis's liberty.

---

[6] Ellis argues that Farrell, as an experienced real estate fraud investigator, should have discovered public "documents that verified the legitimacy of the transaction" or secured exculpatory "sworn affidavits" before Ellis's arrest.  (Opp. at 18.)  This argument fails for at least two reasons.  First, publicly-recorded real estate forms are not definitive proof that the underlying transaction was legitimate.  Second, even if they were, Farrell's failure to uncover relevant evidence before securing an arrest warrant, even if poor practice, is not a fabrication.

**C.**    **Malicious Prosecution (Against All Moving Defendants) (Counts 3, 8)**

To prevail on a malicious prosecution claim under § 1983, a plaintiff must establish a claim of malicious prosecution under state law and then show that their Fourth Amendments rights were violated after legal proceedings were initiated. *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010). The elements of an action for malicious prosecution under New York law are "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453 (N.Y. 1983).) "Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim; however, the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).

Ellis argues he was subjected to malicious prosecution when Farrell "pursued criminal charges against [Ellis] despite clear evidence of innocence." (FAC at 3; *see also* Opp. at 7 ("[c]ontinuation of prosecution despite exculpatory evidence" amounted to malicious prosecution).) But that argument fails because Ellis alleges that he was ***not*** prosecuted. (Ellis Aff. at 2; *see also* Opp. at 10 (acknowledging "[t]he case was not indicted or prosecuted" and "remained undocketed"), 11 ("Farrell's alleged conduct never reached the judicial phase of a criminal proceeding").) Rather, he alleges only that he was arrested, but not any criminal proceedings beyond that.

A warrantless arrest alone does not satisfy the initiation of proceedings element of a malicious prosecution claim. *See Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980) (the "essence of [a § 1983 malicious prosecution] claim is the alleged groundless prosecution, without which there would not be any basis for the claim"); *Scott*

17

*v. City of New York*, No. 19-CV-6289, 2022 WL 846929, at *4 (S.D.N.Y. Mar. 22, 2022) (dismissing malicious prosecution claim where "[f]ollowing [plaintiff's] arrest, he was released from custody and the Manhattan District Attorney's office declined to prosecute him"); *Pierre v. City of New York*, 531 F. Supp.3d 620, 626 (E.D.N.Y. 2021) ("an arrest without more is insufficient to establish the requisite initiation" for a malicious prosecution claim); *Chevalier v. City of New York*, No. 18-CV-5048, 2020 WL 1891925, at *5 n.5 (S.D.N.Y. Apr. 16, 2020) ("Because the charges against Plaintiff were dismissed before arraignment, no malicious prosecution claim would lie"); *Carson v. Lewis*, 35 F. Supp.2d 250, 263 (E.D.N.Y. 1999) ("An indictment is the legal process commencing the prosecution when an arrest is effectuated without a warrant").  Even if the warrantless arrest were sufficient, there is no indication that Farrell was involved.  *Stampf v. Long Island R. Co.*, 761 F.3d 192, 199 (2d Cir. 2014) (to be liable for malicious prosecution, the "defendant [must have] played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to").

Notably, the Exhibits include a copy of a desk appearance ticket ("DAT") issued to Ellis and signed by Kush and other NYPD officers.  (*See* Dkt. 66-9 at ECF 5-9.)  The Second Circuit has held that, "under New York law, the issuance of a DAT sufficiently initiates a criminal prosecution to sustain a claim of malicious prosecution."  *Stampf*, 761 F.3d at 199.  The DAT is not alleged in the FAC or addressed in Ellis's Opposition, and it is neither incorporated by reference nor integral to the FAC.  The DAT therefore is not to be considered on the instant motion to dismiss.

But even if the Court were to consider the DAT, the malicious prosecution claim would still fail because Ellis does not plausibly allege the post-arraignment seizure

18

element of a § 1983 malicious prosecution claim; his warrantless arrest and single undocketed court appearance do not suffice.[7]  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (plaintiff's "arrest cannot [satisfy] the predicate deprivation of liberty [element of a malicious prosecution claim under § 1983] because it occurred prior to his arraignment and without a warrant"); *Anderson v. City of Mount Vernon*, No. 23-CV-3963, 2024 WL 2158390, at *4-5 (S.D.N.Y. May 13, 2024) (finding no post-arraignment restraint of liberty where plaintiffs were never "arraigned, required to post bail, or subjected to court-ordered travel restrictions" after a warrantless arrest and strip search, regardless if a DAT was issued); *Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 9482109, at *17 (E.D.N.Y. Aug. 14, 2017) (holding, after *Stampf*, that an arrest "concluding with the issuance of the desk appearance ticket … cannot alone support a claim for malicious prosecution") (citing cases), *R. & R. adopted*, 2017 WL 4280549 (E.D.N.Y. Sept. 26, 2017).  The allegations here are readily distinguishable from *Swartz v. Insogna*, on which Ellis relies.  704 F.3d 105, 112 (2d Cir. 2013).  There, unlike here, a criminal complaint was filed against the plaintiff, the plaintiff was arraigned and made three court appearances, and the charge "remained pending for several years" during which time the plaintiff was "subject to the orders of the court."  *Id.* at 108, 112.

---

[7] In his Opposition, Ellis also characterizes several of his alleged injuries as post-arraignment "seizures," including his "psychological damage," "drain on financial resources from legal expenses and lost opportunity," and loss of "faith in the judicial system." (Opp. at 24-25.)  Ellis provides no support for the assertion that these collateral consequences of his arrest satisfy the post-arraignment seizure element.

As an alternative basis for dismissal, the FAC, even liberally construed, fails to allege the lack of probable cause to arrest Ellis and issue him the DAT.[8]  An "officer has probable cause when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed … a crime."  *Simpson*, 793 F.3d at 265 (internal quotations and citation omitted).  The Moving Defendants argue Jerome and Sinclair's formal report to Kush established probable cause; that Kush did not have knowledge of any exculpatory evidence to vitiate that probable cause; and that Kush did not have an obligation to conduct a more comprehensive investigation at that time.  (Def. Mem. at 12-16.)  The Court agrees.  *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim");  *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (for purposes of probable cause inquiry, it does not matter that an "investigation might have cast doubt upon the basis for the arrest"); *Miloslavsky v. AES Engineering Society, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (officer "has probable cause to arrest if he received his information from … the putative victim … who it seems reasonable to believe is telling the truth.  The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed") (internal citations omitted), *aff'd,* 993 F.2d 1534 (2d Cir. 1993).

---

[8] To the extent the FAC can be construed as including a false arrest claim against Kush, *see* Opp. at 20, that claim would similarly fail because "probable cause is a complete defense to false arrest claims."  *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)*.*

Ellis argues "there [was] reason [for Kush] to question the veracity of the complainants" because, *inter alia*, there was publicly available exculpatory material, and Jerome and Sinclair had "civil disputes [with Ellis] and a financial motive to fabricate claims." (Opp. at 21-22.) These arguments are unpersuasive because there is no allegation or indication in the FAC that Kush was aware of these facts at the time he issued the DAT. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) ("Courts evaluating probable cause … must consider those facts available to the officer at the time"); *Overby v. Fabian*, No. 17-CV-3377, 2018 WL 3364392, at *9 (S.D.N.Y. July 10, 2018) (dismissing claim at motion to dismiss stage for failure to allege lack of probable cause and rejecting plaintiff's argument concerning complainant's reliability because the relevant facts "were not available to the arresting officer at the time").

Moreover, even if a prosecution were initiated without probable cause and Ellis could show there was a sufficient seizure, Farrell would be immune from suit. *Hill*, 45 F.3d at 661 ("With respect to the … malicious prosecution [claim], it has long been settled that prosecutors are entitled to [absolute] immunity from § 1983 liability for initiating a prosecution") (citing *Imbler,* 424 U.S. at 431). Ellis's briefing repeatedly argues Farrell's actions were purely investigative such that absolute immunity does not attach.[9] But, at the same time, Ellis seeks liability for Farrell's purported initiation of a proceedings for purposes of a malicious prosecution claim. (*See* Opp. at 10-11.) These arguments are contradictory – Ellis cannot have it both ways.

---

[9] Ellis's briefing also incorrectly suggests that prosecutorial immunity only attaches after "indictment or [during] court-based advocacy." (Opp. at 16.) As noted above, the Supreme Court has adopted a functional approach to determining whether a prosecutor is immune for certain acts and has recognized that absolute immunity protects conduct in "preparation for the initiation of a prosecution." *Buckley*, 509 U.S. at 273.

For the above reasons, the malicious prosecution claim should be dismissed with prejudice as to Farrell (i.e., Count 3). Not being a prosecutor, however, Kush cannot claim prosecutorial immunity. Accordingly, the malicious prosecution claim should be dismissed without prejudice to replead as to Kush in the event that Ellis can plausibly amend his pleading to allege, *inter alia*, the DAT, lack of probable cause, and a cognizable seizure.

**D.     Retaliatory Prosecution (Against Farrell) (Count 6)**

To plead a First Amendment retaliation claim, a plaintiff must allege "1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003).

The retaliatory prosecution claim fails for the simple reason that Farrell never prosecuted Ellis (i.e., there was no adverse action). *Hartman v. Moore*, 547 U.S. 250, 257, 126 S. Ct. 1695 (2006) (holding that a "plaintiff in a retaliatory-prosecution action must plead … the absence of probable cause for pressing the underlying criminal charges"); *see also Nollah v. New York City*, No. 17-CV-634, 2018 WL 4636847, at *5 (S.D.N.Y. Sept. 27, 2018) ("retaliatory prosecution claim accrues when the prosecution is commenced by the filing of the criminal charges"). (*See also* FAC at 4 (Ellis acknowledging "[r]etaliatory prosecution occurs when a government official initiates criminal proceedings against an individual").) A criminal investigation alone does not suffice. *Buckner v. Shumlin*, No. 1:12-CV-90, 2013 WL 6571814, at *5-6 (D. Vt. Dec. 13, 2013) (observing federal "courts in other circuits have determined that a retaliatory investigation does not form the basis of a constitutional claim," the Second Circuit has not

weighed in on the issue, and holding that such a theory of liability is not "clearly established" to defeat qualified immunity).[10]

The retaliatory prosecution claim also fails because of prosecutorial immunity. A § 1983 action for "retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute." *Hartman*, 547 U.S. at 261-62. And, even if, as Ellis suggests, the retaliatory prosecution claim were premised on Ellis's arrest (*See* Opp. at 12), a prosecutor's involvement in approving an arrest affidavit in preparation for a prosecution is similarly immune from liability. *Dockery v. Tucker*, 73 F. Supp.2d 224, 229 (E.D.N.Y. 1998) ("The Second Circuit has extended absolute immunity to cover a prosecutor's preparation of an indictment and pursuit of an arrest warrant") (citing cases).

The retaliatory prosecution claim should be dismissed, with prejudice. Due to prosecutorial immunity, amendment would be futile.[11]

---

[10] The Opposition urges that Ellis's arrest "based on a falsified affidavit signed off by ADA Farrell" and Farrell's suppression of evidence were adverse actions. (Opp. at 12.) The first of these allegations contradicts Ellis's claim that his arrest was warrantless, rendering it implausible. As to the second, and as explained above, Ellis does not plausibly allege suppression of evidence. Additionally, although not mentioned by Ellis, the DAT would not save Ellis's retaliatory prosecution claim against Farrell, as there is no indication that Farrell was involved in issuing the DAT.

[11] The Court also observes that at least one of Ellis's causation allegations are implausible. Ellis asserts that his arrest and "prosecution" were, at least in part, retaliation for a filing he made in the State Action. (Opp. at 12; *see id*. at 5.) He states that the filing of the State Action "preceded Farrell's involvement in the criminal … proceedings." (Opp. at 12.) The State Action, however, was filed in January 2025, nearly a year *after* Ellis's arrest. *See generally*, *Lynn Jerome et al v. 1883 East 53rd Street LLC et al*, Case No. 500938/2025 (Sup. Ct., Kings County); *see also Edwardo v. Roman Catholic Bishop of Providence*, 579 F. Supp.3d 456, 465 (S.D.N.Y. 2022) ("On a motion to dismiss, a court may take judicial notice of related lawsuits … and litigation filings") (subsequent history omitted). Because the identified adverse action predates the protected conduct, the latter cannot plausibly cause the former. *See Rodgers v. Town of Hempstead*, No. 22-CV-5895,

E.    **Abuse Of Process (Against All Moving Defendants) (Count 11)**

Courts look to state law to determine what constitutes a malicious abuse of process claim under § 1983.  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (finding abuse of process supports liability under § 1983).  Under New York law, a "malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Id.*  In the FAC, Ellis asserts Kush and Farrell "initiated and continued legal proceedings against Plaintiff not to seek justice, but to intimidate, retaliate, and cause harm, despite overwhelming exculpatory evidence."  (FAC at 6.)

As Moving Defendants correctly observe (Def. Mem. at 9-10), the claim is deficient in (at least) two respects: (1) the FAC fails to allege a collateral purpose, and (2) the claim is implausible because no proceedings were initiated against Ellis according to his own pleading.  *See Savino*, 331 F.3d at 77 ("to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution.  Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution"); *Dowd v. DeMarco*, 314 F. Supp.3d 576, 585 (S.D.N.Y. 2018) (noting "malicious motive alone ... does not give rise to a cause of action for abuse of process.  Rather, some other abuse of the charges after they were issued would have been necessary, such as the use of the

---

2025 WL 964098, at *4 (E.D.N.Y. Mar. 31, 2025) ("courts have rejected First Amendment retaliation claims when the alleged adverse action occurred or began before the protected speech") (citing cases).

24

charges to extort a payment or other concession") (internal quotations, citation, and brackets omitted).

In Opposition, Ellis largely rewrites his abuse of process claims in greater detail, albeit without much clarity or consistency. He addresses his claims against Farrell and Kush separately and newly proffers a collateral purpose. He asserts, "Farrell employed the legal process of arrest by authorizing and sustaining criminal charges" to, *inter alia*, "discredit [Ellis] in [the State Action]." (Opp. at 14-15; *see also id.* at 15 (arguing "Farrell's involvement in initiating and sustaining the criminal complaint … satis[fies] the first prong of abuse of process").) Ellis's claim is, at least in part, implausible because the arrest occurred nearly a year before Jerome and Sinclair filed the State Action. (*See* Dkt. 66-14 at ECF 13-19; State Action, Dkt. 1.) Ellis does not explain how Farrell could have sought to use an arrest to "discredit" Ellis in an action that was not yet filed.

But even assuming Ellis plausibly alleged a collateral purpose and cognizable legal process (i.e., an arrest),[12] the claim against Farrell is barred by absolute immunity due to its explicit focus on his role in initiating and sustaining criminal charges, key functions of a prosecutor. *Shmueli*, 424 F.3d at 237; *see also Bender v. City of New York*, No. 09-CV-3286, 2011 WL 4344203, at *7 (S.D.N.Y. Sept. 14, 2011) (finding prosecutor immune from abuse of process claim premised on their bringing of charges and participation "in

---

[12] There is some inconsistency in the case law regarding whether a **warrantless** arrest amounts to "legal process." *Compare Schoolcraft v. City of New York*, 103 F. Supp.3d 465, 524 (S.D.N.Y. 2015) ("Warrantless arrest cannot form the basis for [malicious abuse of process] claim"), *on reconsideration in part*, 133 F. Supp.3d 563 (S.D.N.Y. 2015) *with Wagner v. Hyra*, 518 F. Supp.3d 613, 631 (N.D.N.Y. 2021) (declining to follow *Schoolcraft* and rejecting argument that a warrantless arrest is insufficient to support an abuse of process claim). The Court need not untangle those decisions given the alternative bases for dismissal in this case.

25

the procurement of arrest … warrants").  The abuse of process claim against Farrell should be dismissed with leave to amend.[13]

As for Kush, Ellis argues he abused legal process by "submit[ing] an arrest affidavit … [t]hat directly resulted in [Ellis's] arrest" to influence, and retaliate for, Ellis's conduct in the State Action.  (Opp. 29-30.)  Ellis's theory, however, is implausible both because Ellis denies that his arrest was based on a warrant, and because the arrest preceded the filing of the State Action by almost a year.  The claim against Kush thus should also be dismissed with leave to amend.

## F.      Equal Protection (Against All Moving Defendants) (Count 15)

Ellis brings a "class-of-one" equal protection claim based on the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073 (2000). (FAC at 8; Opp. at 17, 27.)  Accordingly, Ellis must "allege[] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Olech*, 528 U.S. at 564.  Ellis asserts that the Moving Defendants "selectively prosecuted Plaintiff despite exculpatory evidence while declining to prosecute similarly situated individuals under similar circumstances," and did so arbitrarily.  (FAC at 8; *see also* Opp. at 3 ("Plaintiff was selectively targeted for prosecution").)

Again, Ellis alleges he was not prosecuted yet rests his entire equal protection claim on the fact that he was.  In any event, Ellis's class-of-one theory raised in the FAC must also be dismissed for failing to identify and describe similarly situated comparators, beyond the above conclusory allegation.  *Ruston v. Town Board for Town of Skaneateles*,

---

[13] The Court cannot rule out the possibility that Ellis can allege an abuse of process claim against Farrell based on conduct outside of his role as prosecutor (e.g., unrelated to his approval of the arrest warrant affidavit and the initiation of proceedings).

610 F.3d 55, 59 (2d Cir. 2010) (dismissing class-of-one equal protection clause claim where complaint did not allege "specific examples" of comparators but only included a conclusory statement, and abrogating certain pre-*Iqbal* cases which permitted general pleading of class-of-one claims); *Witt v. Village of Mamaroneck*, No. 12-CV-8778, 2015 WL 1427206, at *8-9 (S.D.N.Y. Mar. 27, 2015) (dismissing class-of-one equal protection claim where plaintiff was "unable to identify materially similar, let alone identical comparators," and noting, post-*Ruston*, courts require allegations describing specific "instances where [comparators] have been treated differently for the purposes of equal protection") (internal quotations and citation omitted), *aff'd sub nom. Witt v. Village of Mamaroneck, New York*, 639 F. App'x 44 (2d Cir. 2016) (summary order).

In opposition, Ellis refocuses the class-of-one equal protection claim on his "selective investigative treatment," as opposed to selective prosecution, and addresses his claims against Farrell and Kush, separately.  (Opp. at 16.)

As to Farrell, Ellis refers to "similarly situated defendants in comparable real estate disputes," and points to "Jerome and Sinclair" as comparators.  (Opp. at 16.)  The first set of comparators, like those alleged in the FAC, is conclusory and thus insufficient.  *Ruston*, 610 F.3d at 59.  The second set of proposed comparators – Jerome and Sinclair – is inapt; neither of them was falsely accused of deed fraud (as Ellis was) and therefore they cannot be similarly situated.

As to Kush, Ellis identifies ten New York state court cases where "property owners accused of fraud … were investigated with procedural rigor before arrest or … were not arrested at all absent a grand jury indictment." (Opp. at 28.)  For each case, Ellis provides a one-sentence summary describing the investigation leading up to the eventual arrest

and prosecution. These summaries, however, are insufficient because Ellis fails to allege the comparators are "*prima facie* identical." *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019). The Second Circuit has held that "*Olech* claims, which rely on similarity alone, should be subjected to a more stringent similarity standard than class-based discrimination claims." *Id.* at 94 (internal quotations omitted). Accordingly, a claim premised on a class-of-one theory will be dismissed where the plaintiff fails to "allege facts showing that [comparators] were *prima facie* identical to himself."[14] *Pan v. City of Niagara Falls*, No. 23-7513, 2025 WL 1169057, at *2 (2d Cir. Apr. 22, 2025) (summary order); *see also Hu*, 927 F.3d at 94 ("a plaintiff may prevail on [a class-of-one] claim based on *prima facie* identical circumstances alone"). Ellis's claim falls far short of that standard.

Critically, none of the cases appear to involve Kush.[15] *Cf. Hu*, 927 F.3d at 97 ("standard of plausibility [met] by alleging differential treatment **by the same defendant** … for the same conduct") (emphasis added). The brief summaries also fail to describe the nature and methods of the accusations against each defendant, which necessarily are facts critical to how a police officer investigates the accused's conduct and thus

---

[14] Ellis argues "similarly situated individuals need not be identically situated in all respects" and cites *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp.2d 679, 696 (S.D.N.Y. 2011). (Opp. at 27.) The portion of that opinion on which Ellis appears to rely, however, involves selective enforcement claims alleging class-based discrimination or other impermissible motives. *See id*. The *Mosdos Chofetz Chaim* court goes on to explain that an "extremely high level of similarity is required in the 'class of one' context because plaintiffs asserting those claims are attempting to prove that the government's treatment was arbitrary and irrational." *Id.* at 697. Ellis's equal protection claim does not assert class-based discrimination or other impermissible motives, but instead only alleges "irrational and arbitrary treatment." (Opp. at 27.) Accordingly, the more demanding similarity standard applies. Even if the lesser standard applied, however, the FAC would still not meet it for the same reasons.

[15] Ellis does not even allege that the NYPD, Kush's employer, was involved in any of the cases.

28

whether the cases involve similarly situated comparators.  *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019) (dismissing class-of-one claim where complaint "provides insufficient detail about the [comparators]").  Additionally, unlike Ellis, all the comparators in the cases to which he alludes were criminally prosecuted, further distinguishing the instant case from those.  (Opp. at 28.)

The equal protection claim should be dismissed without prejudice.

### G.    Conspiracy, Injunctive Relief, Municipal Liability,[16] and Failure to Intervene[17] (Counts 4, 5, 9, 10)

In opposition, Ellis abandons his § 1985 conspiracy claim given his inability to allege class-based discrimination.  (Opp. at 32.)  *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971) (§ 1985 requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").  Instead, Ellis asserts a conspiracy claim under § 1983.  (Opp. at 32.)  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury;

---

[16] Count 10 is a "supervisor liability" claim against the NYPD and BDAO.  As Ellis acknowledges, however, neither the NYPD nor BDAO is a suable entity under the New York City charter.  (Opp. at 34.)  *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).  The Court therefore construes the claim as brought against the City. *Alleva v. New York City Department of Investigation*, 696 F. Supp.2d 273, 276 (E.D.N.Y. 2010) ("When claims are brought against non-suable entities, the Court may construe them as brought against the City of New York") (internal quotations omitted), *aff'd,* 413 F. App'x 361 (2d Cir. 2011).  And, since the "supervisor liability" claim is brought only against a municipal entity (as opposed to a supervisor), and consistent with Ellis's approach in opposition (*see* Opp. at 3, 34), the Court treats the supervisor liability claim as seeking liability under *Monell*.

[17] Ellis's failure to intervene claim is not explicitly asserted against any of the Moving Defendants.  Even so, the Court addresses it for completeness.

and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

The § 1983 conspiracy claim also fails, however, because Ellis has not plausibly alleged a predicate constitutional injury given that none of the claims discussed above survive dismissal. *See Singer*, 63 F.3d at 119 ("The district court dismissed this claim on the ground that a plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.  In this we agree."); *Johnston v. Town of Orangetown*, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("accompanying § 1983 conspiracy claim was properly dismissed, because [plaintiff] did not show any violation of his constitutional rights"); *Davis-Guider v. City of Troy*, No. 23-589, 2024 WL 5199294, at *3 (2d Cir. Dec. 23, 2024) (summary order) ("Because we conclude that the district court correctly dismissed [plaintiff's] fair trial and malicious prosecution claims, it was also correct to reject his municipal liability and § 1983 conspiracy claims"); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy"); *Westchester County Independent Party v. Astorino*, 137 F. Supp.3d 586, 626 (S.D.N.Y. 2015) ("Because Plaintiffs' substantive constitutional claims fail, their § 1983 conspiracy claim must also be dismissed"); *Francis v. City of New York*, No. 20-CV-642, 2024 WL 1117042, at *6 (E.D.N.Y. Mar. 14, 2024) ("conspiracy claims under [both sections 1985 and 1983] require an underlying constitutional injury").

Ellis "seeks an injunction preventing [BDAO] and NYPD from engaging in similar prosecutorial misconduct," asserts the entities are liable for their failure "to discipline or train [Farrell and Kush] despite known misconduct," and brings a failure to intervene claim

30

against any defendant who had the "opportunity to prevent constitutional violations but failed to do so." (FAC at 3, 5, 6; *see also* Opp. at 34-37, 39-40.) Again, because Ellis has failed to plausibly plead an underlying constitutional violation, there is no basis for injunctive relief, for municipal liability against the City, or for a failure-to-intervene claim. *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (municipality "cannot be liable under *Monell* where Plaintiff cannot establish a violation of his constitutional rights") (internal quotations omitted); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"); *Chepilko v. Henry*, 722 F. Supp.3d 329, 347 (S.D.N.Y. 2024) ("A failure to intervene claim is a derivative claim that must be predicated upon a viable § 1983 claim") (citing *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order)).

These claims should be dismissed without prejudice to replead.

## H.    Abandoned Claims (Counts 7, 16, 17, 20)

Ellis acknowledges that neither the ABA Model Rules of Professional Conduct nor the cited federal criminal statutes provide a private right of action. (*See* Opp. at 19.) Accordingly, Counts 7, 16, 17, and 20 should be dismissed with prejudice.

## I.    State Law Claims (Counts 12, 13, 14, 19)

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Exercising supplemental jurisdiction is discretionary, *see City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523 (1997),

and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

To determine whether to exercise supplemental jurisdiction, a district court must balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614 (1988).  Generally, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966)).

Here, all the federal claims should be dismissed; the case is only at the motion-to-dismiss stage; litigating Ellis's state law claims in this Court is no more convenient than doing so in state court, which is located across the street; and, maintaining jurisdiction over the state claims does not advance either fairness or comity.  The Court should decline supplemental jurisdiction over Ellis's claims under New York law and dismiss them without prejudice.[18]

## J.    Leave To Amend

The Moving Defendants seek dismissal of the FAC with prejudice.  As described above, amendment of Counts 1, 3, 6, 7, 16, 17, 18 and 20 would be futile and those claims should be dismissed with prejudice.  As a pro se plaintiff, Ellis should be afforded at least one opportunity to amend the FAC for the remaining claims.  *See Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020) ("Where a district court cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in

---

[18] Though not addressed herein, the parties dispute whether Ellis filed a timely notice of claim against the City, as required by General Municipal Law § 50.  (*See* Mot. to Dismiss at 22; Opp. at 38.)

stating a claim, a pro se complaint should not be dismissed without granting leave to amend at least once") (internal quotations and citation omitted).  Ellis amended his complaint well before the Moving Defendants filed their motion to dismiss.  As such, Ellis has not yet had an opportunity to address deficiencies raised by the Moving Defendants and should be given leave to do so.

## ELLIS'S MOTION FOR SANCTIONS

In response to the Moving Defendants' motion to dismiss, Ellis filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  The motion should be denied.

### A.    Rule 11 Standard

Under Federal Rule of Civil Procedure 11(b), whenever a pleading or other paper is filed, a party or counsel is required to certify that, to the best of their knowledge, the factual contentions made have evidentiary support and the legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b).  Failure to comply with Rule 11(b) may result in sanctions.  Fed. R. Civ. P. 11(c); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("Sanctions may be – but need not be – imposed" under Rule 11(b) and are within the discretion of the district court).

In considering Rule 11 sanctions, "a court cannot rely on hindsight in assessing the propriety of the attorney's conduct, but must instead base its award on the particular facts that were reasonably accessible to the attorney at the time of the signing."  *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 434 (S.D.N.Y. 1995).  A court must "resolve all doubts in favor of the signer" of the filing.  *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotations omitted).  "The standard for imposing Rule 11

sanctions … is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15-CV-8051, 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017).

Prior to filing a motion for sanctions under Rule 11(b), the moving party must serve the party against whom sanctions are sought a copy of the motion. Fed. R. Civ. P. 11(c)(2). The non-moving party then has 21 days to withdraw or correct the challenged filing. *Id*. Ellis certified that he complied with Rule 11's safe harbor provision (Dkt. 97), and the Moving Defendants do not argue otherwise.

## B.   Ellis's Motion For Sanctions Should Be Denied

Many of Ellis's arguments for sanctions seek to re-litigate issues raised in the motion to dismiss. For instance, the Sanctions Motion describes Farrell's "orchestrat[ion of an illegal] warrantless felony arrest," suppression of evidence, deprivation of Sixth Amendment rights, and misuse of New York's record-sealing statute (Sanctions Mot. at 2, 4, 6, 11); Kush's role in arresting Ellis without a warrant, failure to present Ellis at a *Gerstein* hearing or establish probable cause, and defamatory branding of Ellis as a "Felon" in official documents (*Id.* at 6-7); and certain conduct of non-party ADA John C. Carroll, including in failing to disclose the Exculpatory Material. (*Id.* at 10-14.) Those are improper bases for a Rule 11 motion. Rule 11 is designed to remedy unwarranted legal filings and contentions, not create a cause of action to address conduct which predates the litigation or provide an avenue to relitigate the case's merits.[19] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447 (1990) ("the central purpose of Rule

---

[19] Ellis's reply in support of the Sanctions Motion does not address these bases. (*See* Dkt. 107.)

11 is to deter baseless filings in district court"); *Bay Street Advisors, LLC v. Mahoney*, No. 24-CV-9139, 2025 WL 2506012, at *3 (S.D.N.Y. Sept. 2, 2025) ("Rule 11 permits a party to file a motion for sanctions, based on certain species of bad-faith litigation conduct, but it is well-settled that Rule 11 does not create an independent cause of action") (internal quotations omitted) (citing cases).

Ellis raises a few arguments which, in theory, could support Rule 11 sanctions. However, they do not do so here.  First, Ellis seeks sanctions for certain factual contentions purportedly made by defense counsel without evidentiary support.  Ellis argues defense counsel falsely asserted that Ellis was lawfully arrested pursuant to a judicial warrant when, in fact, no such warrant existed according to NYPD records acquired by Ellis.  (*See, e.g.,* Sanctions Mot. at 6 ("Defendants' pleadings that the arrest was lawfully authorized or judicially sanctioned is objectively false") (emphasis omitted).) Defense counsel's arguments, raised on reply, were entirely reasonable and do not warrant sanctions.  The Opposition repeatedly references an arrest warrant affidavit which resulted in Ellis's arrest.  (*See, e.g.*, Opp. at 7, 8, 14, 21, 22, 24.)  Given the Moving Defendants were obliged to accept Ellis's allegations as true on a motion to dismiss, their arguments concerning an arrest warrant were proper.  Defense counsel did not make any factual assertion lacking evidentiary support; instead, they appropriately adopted factual allegations **made by Ellis** and made reasonable inferences therefrom.

Second, Ellis takes issue with certain legal arguments defense counsel raised in the motion to dismiss briefing, namely their assertions of prosecutorial immunity and the existence of probable cause for Ellis's arrest.  (Sanctions Mot. at 3, 14-15, 17.)  As to the first, Ellis does not identify which of Farrell's many assertions of absolute immunity were

35

unwarranted, but instead reiterates his general position that Farrell's conduct was purely investigative. In any event, as explained above, the Court largely agrees with the Moving Defendants that, as alleged, much of the complained of conduct – including Farrell's effort to procure an arrest warrant, if any, and to pursue criminal charges, if any – was prosecutorial in nature, and thus protected by absolute immunity under governing law. Accordingly, defense counsel's arguments in that regard were not frivolous.

Defense counsel's argument that, as pled, Kush had probable cause (or, at least, arguable probable cause) for Ellis's arrest also does not warrant sanctions. Again, Moving Defendants' argument was made in good faith, includes appropriate reference to both factual allegations included in the FAC and governing law, and was largely adopted by the Court.[20] (*See* Def. Mem. at 23-25.) Sanctions are not warranted.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be GRANTED with leave to amend as to Counts 2, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15 and 19, and the Sanctions Motion should be DENIED. To the extent not addressed above, the Court has considered Ellis's remaining arguments and found them to be either moot or without merit.

## PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections

---

[20] Ellis assails suppression of the Exculpatory Material and argues that it "directly undermined probable cause" for arrest. (Sanctions Mot. at 8-9.) That argument does not stand up to scrutiny. As explained above with respect to Counts 1 and 18, Ellis does not plausibly allege a *Brady* violation. Additionally, as noted with respect to Counts 3 and 8, Ellis has not plausibly alleged that either Kush or Farrell was subjectively aware of the Exculpatory Material or any other exculpatory evidence before the arrest. Indeed, once Farrell reviewed the Exculpatory Material, he did not prosecute Ellis. (Ellis Aff. at 1-2.)

to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Arun Subramanian, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Subramanian.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       December 19, 2025

Copies transmitted this date to all parties via ECF.

37